UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

JANE DOE,

    Plaintiff,                                             Case No. 1:23-cv-23497-BB

v.

MIAMI GARDENS SQUARE ONE, INC., *individually and d/b/a* TOOTSIE'S CABARET MIAMI,

    Defendant.
_____/

## BENCH BRIEF IN SUPPORT OF DEFENDANT'S RULE 50(a) MOTION FOR JUDGMENT AS A MATTER OF LAW

Defendant Miami Gardens Square One, Inc., individually and d/b/a Tootsie's Cabaret Miami ("Defendant" or "Club") files this Bench Brief in Support of Defendant's Rule 50(a) Motion for Judgment as a Matter of Law. This motion focuses on the legal insufficiency of the evidence for Plaintiff's remaining claims and punitive damages. In support thereof, Defendant respectfully shows the following:

### INTRODUCTION AND PROCEDURAL HISTORY

This suit is an employment claim alleging Club's liability for sexual harassment and sexual assault on the part of unidentified patrons during the ten days that Plaintiff chose to perform at the Club. On June 14, 2023, the EEOC dismissed her Complaint because she was "not in an employment relationship with Respondent." (Exhibit A, EEOC Dismissal and Right to Sue Letter).[1] Plaintiff then filed suit on September 12, 2023, alleging claims for unlawful employment

---

[1] Although the Court will have had the benefit of the Plaintiff's case in chief at the time it considers this motion, Defendant cites to the summary judgment record for ease of reference. Specifically, Exhibit A to Defendant's Motion for Summary Judgment.

practices under Title VII of the Civil Rights Act of 1964 ("Title VII"), Florida Civil Rights Act of 1992 ("FCRA"), the Miami-Dade Code of Ordinances ("MDCO"), as well as a claim of negligence under Florida common law.

Accepting all of the factual allegations in Plaintiff's First Amended Complaint as true without evidence, this Court denied Defendant's Motion to Dismiss for failure to state a claim for relief pursuant to Federal Rule of Civil Procedure 12(b)(6). (Dkt. No. 29). However, the Court later granted in part and denied in part Defendant's Motion for Summary Judgment leaving Plaintiff's remaining claims: Gender Discrimination - Hostile Work Environment under Title VII, Florida Civil Rights Act, and Miami-Dade Code of Ordinances, Negligence, Negligent Infliction of Emotional Distress and Vicarious Liability for Sexual Assault and Battery. (Dkt. No. 82). Defendant now asks the Court to grant this motion for judgment as a matter of law against Plaintiff on her remaining claims.

## **LEGAL STANDARD**

Federal Rule of Civil Procedure 50(a) "is the mechanism for defendants to challenge the sufficiency of a plaintiff's evidence at and after the close of the case." *Pearson v. Deutsche Bank AG,* No. 21-CV-22437, 2023 WL 3043406, at *3–4 (S.D. Fla. Apr. 22, 2023), appeal dismissed (Mar. 22, 2024) (Judge B. Bloom). Specifically:

> (a) (1) If a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue, the court may:
>
> (A) resolve the issue against the party; and
>
> (B) grant a motion for judgment as a matter of law against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue.
>
> *Id.* (citing Fed. R. Civ. P. 50). "A court should grant a motion for judgment as a matter of

law only 'when there is no legally sufficient evidentiary basis for a reasonable jury' to find for the nonmoving party on the particular issue. *Id. (*citing *Cleveland v. Home Shopping Network, Inc*., 369 F.3d 1189, 1192 (11th Cir. 2004). "One of the fundamental purposes of the contemporaneous objection rule is to protect judicial resources, in particular by ensuring that trial courts will have the opportunity to avoid errors that might otherwise necessitate time-consuming retrial." *United States v. Turner*, 474 F.3d 1265, 1276 (11th Cir. 2007) (alterations adopted). "Another purpose of the contemporaneous objection rule is to prevent counsel from 'sandbagging' the courts by withholding a valid objection from the trial court in order to obtain a new trial when the error is recognized on appeal." *Id*.

## ARGUMENTS AND AUTHORITIES

Plaintiff alleges Defendant, as her employer, cultivated a hostile work environment and that as an employee of Defendant, she is entitled to the protections under Title VII, the FCRA, and the MCDO. (*See generally* Dkt. No. 13). Based on Plaintiff's operational freedom and her very short tenure at the Club, among other factors, there is insufficient evidence which would support a jury finding that Plaintiff is a covered employee under the applicable hybrid approach, which is a prerequisite to her assertion of Federal and state employment claims. Furthermore, with the benefit of a factual record, Plaintiff has failed to meet her burden of establishing Defendant cultivated a hostile work environment or acted negligently.

**I.** **Plaintiff failed to provide any competent evidence that would permit the Jury to find that Tootsie's Cabaret Miami exercise sufficient control over Plaintiff or that Tootsie's is Plaintiff's employer.**

Plaintiff has failed to carry her burden of offering evidence that would permit the jury to find Tootsie's was Plaintiff's employer. In determining the threshold issue of employee status, the "most important" factor is the "extent of the employer's right to control the 'means and manner'

of the worker's performance." *Cobb v. Sun Papers, Inc.,* 673 F.2d 337, 340 (11th Cir. 1982) (quoting *Spirides v. Reinhardt*, 613 F.2d 826, 831-32 (D.C. Cir. 1979)). The court and the jury should also consider eleven other factors:

> (1) the kind of occupation, with reference to whether the work usually is done under the direction of a supervisor or is done by a specialist without supervision; (2) the skill required in the particular occupation; (3) whether the "employer" or the individual in question furnishes the equipment used and the place of work; (4) the length of time during which the individual has worked; (5) the method of payment, whether by time or by the job; (6) the manner in which the work relationship is terminated; i.e., by one or both parties, with or without notice and explanation; (7) whether annual leave is afforded; (8) whether the work is an integral part of the business of the "employer"; (9) whether the worker accumulates retirement benefits; (10) whether the "employer" pays social security taxes; and (11) the intention of the parties.

*Id.* (quoting *Spirides*, 613 F.2d at 832). Thus, under the hybrid approach, "it is the economic realities of the relationship viewed in light of the common law principles of agency and the right of the employer to control the employee that are determinative." *Id.* at 341.

First of all, Plaintiff performed at the Club for ten days and made at least $30,000.00. Plaintiff testified that she earned $3,000 on her lowest earning night while performing at the Club, and on her highest earning night, she earned $9,000. (Exhibit B, Plaintiff's Deposition Testimony, 135:13-20 and 134:23-135:7).[2] Thus, in the 10 days that Plaintiff performed at the Club, she earned at least $30,000.

Not only did Plaintiff have a short duration of performing at the Club but the manner in which entertainers perform is entirely up to them. Furthermore, Plaintiff made money based on how much she could get patrons to agree to pay her. That was based entirely on her own skill and acumen. (*Id.* at 136:12-137:4). In fact, based on her testimony Plaintiff had considerable skill at

---

[2] Although the Court will have had the benefit of the Plaintiff's case in chief at the time it considers this motion, Defendant cites to the summary judgment record for ease of reference. Specifically, Exhibit B to Defendant's Motion for Summary Judgment.

her job of entertaining customers, allowing her to command $1,600 per hour in the VIP section when the minimum, according to her, was $800. (*Id.* at 26:15-27:3; 43:4-12).

Plaintiff testified that all expenses related to clothing, makeup, and hair were borne by the entertainers themselves. (*Id.* at 51:24-9). Moreover, the Entertainer License Agreement ("ELA") does not require Plaintiff to perform exclusively for the Club, so the location, like virtually every aspect of the job, is at Plaintiff's discretion. As the Court noted in its order on the motion to dismiss, Plaintiff's method of payment weighs in favor of independent contractor status because Plaintiff did not receive hourly compensation but rather received compensation from patrons. (Dkt. No. 29, p. 13). Additionally, the Court noted in its order on the motion to dismiss, the termination of work relationship factor does not weigh in favor of either determination and Plaintiff terminated her relationship with the Club voluntarily. (*Id.* at p. 14). Moreover, Plaintiff did not receive annual leave, did not accumulate retirement benefits, and was responsible for her own taxes. All of these facts weigh in favor of independent contractor status.

> II. **No reasonable Jury could find for Plaintiff on her Hostile Work Environment claims because there is no evidence that the Club knew or should have known of the Incidents made the basis of her claims.**

Plaintiff failed to carry her burden of establishing her hostile work environment claim. "[A] plaintiff wishing to establish a hostile work environment claim [must] show: (1) that [s]he belongs to a protected group; (2) that [s]he has been subject to unwelcome harassment; (3) that the harassment must have been based on a protected characteristic of the employee, such as [gender]; (4) that the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment; and (5) that the employer is responsible for such environment under either a theory of vicarious or of direct liability." *Mejdoub v. Desjardins Bank, N.A.*, No. 14-CIV-62722, 2016 WL 4369968, at *8 (S.D. Fla. Jan.

11, 2016) (citing *Miller v. Kenworth of Dothan, Inc.,* 277 F.3d 1269, 1275 (11th Cir. 2002)).

Although "[a]n employer may be found liable for the harassing conduct of its customers if the employer fails to take immediate and appropriate corrective action in response to a hostile work environment of which the employer knew or reasonably should have known," Plaintiff failed to present evidence of constructive knowledge.[3] *Watson v. Blue Circle, Inc.* 324 F.3d 1252, 1258 n. 2 (11th Cir. 2003).

Plaintiff's testimony regarding patron misconduct, while very upsetting and severe, does not support a legal basis for the Club's liability or that the Club could even reasonably have known that those incidents occurred. For both incidents, there is no evidence that the Club had notice of the incident. The inquiry then becomes whether Defendant's sexual harassment policy was effective.

### 1.     The June 15, 2022 Incident

The June 15, 2022 incident involved a patron who allegedly penetrated Plaintiff's vagina against her will in the VIP room. (Dkt. No. 13, ¶¶ 45-68). Plaintiff testifies that after being forcibly grabbed from behind, she attempted to yell to tell the patron to stop but she was muffled by the patron's hands on her face. (Exhibit B, 96:13-24). She struggled with the patron for "probably 2 minutes" before deciding to "go limp" and stopped yelling. (*Id.* 98:23-99:16; 38:2 ("It's a very loud club")). These two minutes were the window of time for Club employees to have potentially heard her muffled protests from the VIP Room. After about 20 minutes of total time in the VIP Room, Plaintiff and the patron left and parted ways. (*Id.* at 104:12-25).

Plaintiff has testified that either her screams were ignored or no one was upstairs supervising the VIP area. However, Mr. Hernandez and Mr. Lopez both testified that the VIP area,

---

[3] As this Court held in its summary judgment issue, there is no actual knowledge as a matter of law. (Dkt. No. 82, p. 37).

-6-

including the hallway, experiences heavy foot traffic and will always have someone upstairs. (Exhibit D, 61:3-16 and Exhibit E, 46:20 to 47:7 and 40:20-25). This includes not only the VIP host and security, but also other dancers, patrons, waitresses, food runners, bus boys, and sweepers.

Plaintiff did not tell anyone affiliated with the Club or allow the Club to take action against the assailant. She never filed a police report. She testified that she had some redness, but the 'obvious bruising and wounds' alleged in her complaint to signal to others at the Club that she might need assistance were not visible that night and actually "became bruises later." (Exhibit B, 109:1-12). There are no facts to establish that the Club's sexual harassment policy was ineffective to confer constructive knowledge. And indeed, had the incident been reported, the undisputed evidence is that the Club would have taken action pursuant to its zero tolerance policy. (Exhibit C, p. 1).[4] Furthermore, adherence to this policy is a reasonable response to such incidents, as is the expectation they would be reported. *Faragher v. City of Boca Raton*, 524 U.S. 775, 780 (1998).

### 2. June 20, 2022 Incident

The second alleged incident occurred on June 20, 2022 with a different patron. Plaintiff testified that after the patron began sexually assaulting her, she yelled at the patron, which caught the attention of an unnamed Club employee. (Exhibit B, 58:3-7). That employee is never identified and there is no evidence linking that individual to the Club. The uncontroverted testimony of Club employees is that every employee knows to report a complaint of sexual harassment, triggering the reporting procedure that would have documented this incident had it actually been reported.

Later that evening, Plaintiff approached the patron who allegedly assaulted her and began speaking Spanish to him, at which time Plaintiff testifies he inappropriately touched her again. (*Id.*

---

[4] Although the Court will have had the benefit of the Plaintiff's case in chief at the time it considers this motion, Defendant cites to the summary judgment record for ease of reference. Specifically, Exhibit F to Defendant's Motion for Summary Judgment.

at 62:1-24). She then testified that she reported the incident to Mr. Otero, who has not worked at the Club for over ten years, who asked her why she allowed it to happen twice. (*Id.*, 63:24-24.); (Exhibit C, p. 2). She testified she was certain it was Mr. Otero to whom she reported the incident. (Exhibit B, 23:10-12).

Self-serving testimony that she reported the incident to an undisclosed employee of the Club cannot raise a fact issue regarding the effectiveness of the policy in the face of uncontroverted testimony regarding the Club's employees' adherence to the sexual harassment reporting policy. (*See* Exhibit C, p. 1). Every Club employee was made aware of this policy before the start of their employment. (*Id.*). There is no incident report relating to Plaintiff whatsoever, including the misconduct she testified reporting to a manager who had not worked at the Club for ten years.

There is simply no evidence that would allow a reasonable juror to find that the Club had constructive knowledge of the incidents due to an ineffective policy.

### III. Plaintiff's claims under FCRA and the MDCO fail for the same reasons her Title VII claims fail.

The FCRA is modeled after Title VII, and thus, Florida courts look to both Florida state law and Title VII case law to interpret the FCRA. *Jones v. Bank of America*, 985 F.Supp.2d 1320, 1327 (M.D. Fla., 2013). The MDCO workplace discrimination provisions are likewise substantively identical to Title VII. *See Telesca*, 390 F. App'x at 879, n. 1 (11th Cir. 2010).

Because the FCRA (and the MDCO) was patterned after Title VII, it is interpreted in accordance with those decisions construing Title VII, and thus separate analysis of FCRA claims in Title VII action is not required. *Shedrick v. District Bd. of Trustees of Miami-Dade College*, 941 F.Supp.2d 1348, 1363 n. 7 (S.D. Fla. 2013) (citing *Thomas v. Miami Dade Pub. Health Trust*, 369 Fed. App'x. 19, 21 n. 2 (11th Cir. 2010) (citing *Wilbur v. Corr. Servs. Corp.*, 393 F.3d 1192, 1195 n. 1 (11th Cir. 2004)). Therefore, Plaintiff has also failed to prove her claims under the FCRA and

the MCDO for the same reasons detailed above.

### IV.     No reasonable jury could find that Defendant breached its duty to Plaintiff.

Plaintiff has failed to prove that Defendant breached any duty to Plaintiff. Plaintiff alleges Defendant breached its duty to Plaintiff by failing to take reasonable measures to prevent its patrons from sexually assaulting Plaintiff. (Dkt. No. 13, ¶ 334). Plaintiff further alleges Defendant knew or should have known that they were creating a culture and environment where Plaintiff would be sexually assaulted by the Club's patrons. (Dkt. No. 13, ¶ 333).

To prevail on a negligence claim, Plaintiff "must first demonstrate that the defendant owed a 'duty, or obligation, recognized by the law, requiring the [defendant] to conform to a certain standard of conduct, for the protection of others against unreasonable risks.'" *Williams v. Davis*, 974 So. 2d 1052, 1056 (Fla. 2007) (quoting *Clay Elec. Coop., Inc. v. Johnson,* 873 So.2d 1182, 1185 (Fla. 2003). Secondly, Plaintiff "must establish that the defendant failed to conform to that duty." *Id.* "Third, there must be '[a] reasonably close causal connection between the [nonconforming] conduct and the resulting injury' to the claimant." *Id.* Lastly, Plaintiff "must demonstrate some actual harm." *Id.*

On January 13, 2025, this Court determined the risk of Plaintiff's alleged harm was reasonably foreseeable, and therefore, since Defendant had control of the premises, it had a duty to prevent such harm from third parties. (Dkt. No. 82, p. 57-58). However, Plaintiff has failed to prove Defendant breached any duty. Specifically, Plaintiff failed to prove no one was present in the VIP area on June 15, 2022. Rather, Defendant has proven that there are always Club employees and security in the VIP area at any given time. (Exhibit D, Michael Hernandez' Deposition Testimony, 61:3-16; Exhibit E, Robert Lopez' Deposition Testimony, 46:20 to 47:10). Likewise, in regard to the incidents on June 20, 2022, Plaintiff failed to prove her allegation that the first

incident was reported. It is Defendant's policy that if an incident is reported to an employee, that employee then reports the incident to a manager who writes an incident report. (Exhibit C, p. 1) This policy is effective and evidenced by Exhibit F, which shows Defendant's policy in action. (Exhibit F, Incident Report regarding Customer being kicked out of the Club). Furthermore, Plaintiff testified she approached the unknown patron after she was allegedly sexually assaulted by him, rather than taking advantage of Defendant's preventative or corrective opportunities by reporting the patron to an employee or manager. Thus, Plaintiff's negligence claims fail as a matter of law.

## V. No reasonable Jury could find for Plaintiff on her Negligent Infliction of Emotional Distress claim.

Plaintiff further alleges negligent infliction of emotional distress due to the above stated allegations of the Defendant cultivating a sexual environment along with the alleged June 15, 2022, and June 20, 2022 incidents. (Dkt. No. 13, ¶¶ 368-384).

To establish a claim of negligent infliction of emotional distress, the plaintiff must present evidence of the following: (1) the plaintiff must suffer a physical injury; (2) the plaintiff's physical injury must be caused by the psychological trauma; (3) the plaintiff must be involved in some way in the event causing the negligent injury to another; and (4) the plaintiff must have a close personal relationship to the directly injury person." *Zell v. Meek*, 665 So.2d 1048, 1054 (Fla. 1995). "Generally, in order to recover damages for emotional distress caused by the negligence of another in Florida, the plaintiff must show that the emotional distress flows from physical injuries sustained in an impact." *Elliott v. Elliott,* 58 So. 3d 878, 880 (Fla. Dist. Ct. App. 2011). "If the plaintiff suffers an impact, he or she is permitted recovery for the emotional distress flowing from the incident in which the impact occurred," but "if the plaintiff has not suffered an impact, the mental distress must be manifested by a discernable physical injury." (*Id.* at 881).

Here, Plaintiff alleges she was sexually assaulted by Club patrons on June 15, 2022, and June 20, 2022, which could constitute as a physical impact. However, Plaintiff has failed to provide any evidence that she suffers from emotional trauma from the alleged incidents apart from her conclusory statements provided in her First Amended Complaint. Even if Plaintiff was able to provide any evidence of suffering emotional distress, which she has not done, Plaintiff has failed to provide proof of any physical injury, including stemming from the alleged psychological trauma.

Furthermore, if Plaintiff suffered physical injuries from the alleged incidents, her physical injuries allegedly were caused by Defendant's alleged sexual work environment, not by psychological trauma. Plaintiff has failed to provide any evidence showing she suffered psychological trauma, let alone any resultant physical injury.

### VI.    Plaintiff's Vicarious Liability claim fails as a matter of law.

Lastly, Plaintiff presumably alleges Defendant is vicariously liable for the alleged June 15, 2022 and June 20, 2022 incidents. (Dkt. No. 13, ¶¶ 385-404). "The doctrine of vicarious liability allows for parties that are not at fault to be held liable for the actions of active tortfeasors." *Am. Home Assur. Co. v. Nat'l R.R. Passenger Corp.,* 908 So. 2d 459, 471 (Fla. 2005). More specifically, under vicarious liability, "an employer is burdened with the liability resulting from the negligence of its employees; i.e., the employee's liability is imputed to the employer." *Armiger v. Associated Outdoor Clubs, Inc.,* 48 So. 3d 864, 874 (Fla. Dist. Ct. App. 2010). Plaintiff has not identified any employees who contributed to her alleged injuries. Rather, Plaintiff claims an unidentified Club employee witnessed the first incident on June 20, 2022, and that he stated he would "take care of it," which assumably meant he would confront the patron and kick him out. (Exhibit B, 58:19-24). However, there are zero incident reports regarding this June 20, 2022

incident. It is Club policy for employees to submit an incident report for situations such as this one. (Exhibit C, p. 1). Every club employee was made aware of this policy before the start of their employment. (*Id.*). In fact, there are no reports concerning Plaintiff at all. (*Id.*). In other words, Plaintiff did not report any of the alleged incidents to anyone at the club. As such, there is no evidence of any misconduct of Club employees. Accordingly, the Club is not vicariously liable to Plaintiff.

**VII.     Plaintiff's claim for punitive damages fails as a matter of law.**

Lastly, Defendant seeks judgment as a matter of law on Plaintiff's claim for punitive damages "[U]nder Florida law, an award of punitive damages is proper when a defendant's conduct is characterized by willfulness, wantonness, maliciousness, gross negligence or recklessness, oppression, outrageous conduct, deliberate violence, moral turpitude, insult, or fraud." (internal quotation marks omitted) (citations omitted)). *Palm Beach Atl. Coll., Inc. v. First United Fund, Ltd.,* 928 F.2d 1538, 1546 (11th Cir. 1991).

There is no evidence that any extreme or outrageous conduct on behalf of the Club occurred. Furthermore, this Court has already ruled that Defendant did not act recklessly. (Dkt. 82, p. 61). As such, Plaintiff's claim for punitive damages fails as a matter of law.

## CONCLUSION

Defendant Miami Gardens Square One, Inc., individually and d/b/a Tootsie's Cabaret Miami requests that the Court grant its Rule 50(a) Motion for Judgment as a Matter of Law and dismiss Plaintiff's remaining claims against it with prejudice.

DATED: January 27, 2025                    Respectfully submitted,

*/s/   Gary S. Edinger*
Gary S. Edinger, Esquire
Florida Bar No. 0606812
BENJAMIN, AARONSON, EDINGER
 & PATANZO, P.A.
305 N.E. 1st Street
Gainesville, Florida 32601
GSEdinger12@gmail.com

WALLACE & ALLEN, LLP
440 Louisiana, Ste. 590
Houston, Texas 77002
Telephone: (713) 227-1744
Facsimile: (713) 600-0034

Ben W. Allen
*(admitted pro hac vice)*
ballen@wallaceallen.com
Texas Bar No. 24069288

**ATTORNEYS FOR DEFENDANT
MIAMI GARDENS SQUARE ONE, INC., D/B/A
TOOTSIE'S CABARET**

## **CERTIFICATE OF SERVICE**

I certify that I served this instrument in compliance with the Federal Rules of Civil Procedure on January 27, 2025, on the following counsel:

> DEREK SMITH LAW GROUP, PLLC
> *Counsel for Plaintiff*
>
> Caroline H. Miller
> 701 Brickell Ave., Suite 1310
> Miami, FL 33131
> Tel: (786) 292-7605
> Fax: (305) 503-6741
> E: caroline@dereksmithlaw.com

           */s/ Gary S. Edinger*
           Gary S. Edinger, Esquire